IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DYNPORT VACCINE COMPANY LLC, <br> 64 Thomas Johnson Drive, <br> Frederick, Maryland 21702, <br><br>                                               Plaintiff, <br><br> - vs - <br><br> LONZA BIOLOGICS, INC., <br> 90 Boroline Road, <br> Allendale, New Jersey 07401, <br><br><br>                                               Defendant. <br><br> SERVE: <br><br> National Corporate Research, Ltd. <br> 615 S. DuPont Hwy. <br> Dover, Delaware 19901 | Case No. _____ |

## COMPLAINT

DynPort Vaccine Company LLC ("DVC"), by and through the undersigned counsel, files this Complaint against Lonza Biologics, Inc. ("Lonza"), and states as follows:

## INTRODUCTION

1. DVC has a contract with the U.S. government to develop a vaccine against botulinum neurotoxin for the U.S. military. DVC contracted with Lonza to manufacture this vaccine for DVC under FDA Current Good Manufacturing Practice regulations and guidelines.

2. When Lonza refused to perform in a timely manner, DVC terminated the contract and transferred the relevant technology to another company to complete this vital public health work. DVC has incurred and will incur significant costs to have the work Lonza failed to perform

completed by a new manufacturer and to have the work Lonza did perform conducted again, in order to fulfill its contractual requirements with the federal government.

3. DVC now brings this action to recover more than $18.9 million it paid to Lonza for its defective, incomplete, and untimely work, and for the additional damages it suffered from engaging a substitute manufacturer following Lonza's breach, which exceed $20 million.

## PARTIES

4. DVC is a Virginia limited liability corporation with its principal place of business in Maryland.

5. Upon information and belief, Lonza is a Delaware corporation with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because it is between citizens of different states and because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is appropriate in this Court under 28 U.S.C. § 1391(b) and because, by written agreement, Lonza agreed that any litigation between the parties "shall be brought in a Court of competent jurisdiction in the State of Maryland."

## FACTUAL BACKGROUND

### DVC and Lonza Enter Into a Basic Ordering Agreement

8. DVC manages product development programs for U.S. government agencies, and provides consulting, technical and project management services to companies in the biotechnology and pharmaceutical industries. It works with research institutions and other companies to help the government protect the nation and our military against emerging diseases and possible bioterror threats.

9. In May 2002, DVC entered into a Basic Ordering Agreement ("BOA") with Cambrex Bio Science, Inc. Baltimore ("Cambrex"), wherein Cambrex agreed to provide certain services, pursuant to task orders, in the development of certain vaccine products.

10. Thereafter, upon information and belief, Lonza Hopkinton, Inc. purchased Cambrex. In October 2008, the BOA was modified to change Cambrex's name to Lonza Hopkinton, Inc. as the party to the agreement.

11. In October 2009, the BOA was amended by substituting Lonza Biologics, Inc. for the name Lonza Hopkinton, Inc. as the party to the agreement.

12. In the BOA, the parties acknowledged that "[t]he product(s) and associated support being acquired under this BOA are considered critical to the Joint Vaccine Acquisition Program (JVAP) and its schedule." BOA at ¶ 2.1.

13. In the BOA, the parties agreed that DVC would issue task orders to Lonza, and that Lonza "shall complete all work on or before the completion date specified in each [task order]." BOA at ¶¶ 17.1; 24.1

14. In the BOA, Lonza agreed that, "[p]ending resolution of any dispute, [Lonza] shall proceed as directed in writing by [DVC]." BOA at ¶¶ 11.2.6.2.

15. In the BOA, the parties agreed that their disputes would be governed by Maryland law (unless it was silent or conflicted with federal law, in which case federal law would govern), and that any litigation under the BOA between the parties would be brought in a Court of competent jurisdiction in the State of Maryland. BOA at ¶ 11.1.

**DVC Issues Lonza Task Orders Under The BOA For Vaccine Development**

16. In January 2008, DVC issued Task Order 24 to Lonza, authorizing it to "initiate work activities for cGMP Manufacturing and Stability Testing of Recombinant Botulinum Vaccine Candidates rBoNTA (Hc) and rBoNTB (Hc)."

17. DVC thereafter issued, and Lonza accepted, various modifications to Task Order 24, authorizing additional work and increasing the contract payment ceiling value.

18. In December 2010, DVC issued Task Order 32 to Lonza, authorizing it to "initiate work activities to perform 'Antigen A and Antigen B Primary Reference Standard (Drug Substance) lot Release Testing, Stability Testing and Qualification for Use'" as part of the ultimate manufacture of the rBV A/B vaccine.

19. In June 2011, DVC issued Task Order 29 to Lonza.

20. The goal of Task Order 29 was to validate each of the Antigen A and Antigen B Drug Substance (DS) full manufacturing scale processes as part of the Process Qualification stage of process development/validation. This stage provides a documented demonstration that the process, when operated using the commercial process over a number of batches, is reproducible and is capable of yielding product that conforms to the pre-set product specifications and other acceptance criteria. Performance Qualification batches are executed to demonstrate consistency and robustness in the manufacturing process. Performance Qualification protocols are prepared to cover all of the major unit operations in the process. These protocols describe the expected outcomes for each step in terms of independent process parameter controls and dependent product quality attributes. Four conformance lots of each antigen are to be manufactured. Lot release testing is to be performed for each lot. Stability studies are also to be conducted for Clarified Extract (CE) and DS from each lot.

21. DVC thereafter issued, and Lonza accepted, various modifications to Task Order 29, authorizing additional work and increasing the contract payment ceiling value.

22. DVC paid Lonza over $18.9 million for its work under Task Orders 24, 29 and 32.

### Lonza Breaches the BOA

23. On or about February 4, 2013, DVC learned that Lonza had to delay its initiation of work because its Hopkinton, Massachusetts facility, where Lonza's work on the task orders was

occurring, needed to implement certain corrective actions to address the Food & Drug Administration's (FDA) criticisms of Lonza's manufacturing practices.

24. On July 25, 2013, Lonza issued a press release in which it stated that it was moving its Hopkinton operations to a facility in Visp, Switzerland.

25. By letter dated July 25, 2013, DVC advised Lonza that it was concerned about the impact of these events on Lonza's ability to comply with its production requirements under the pending task orders, and requested that Lonza provide a cure plan to ensure that the schedule would be maintained and that the outstanding task orders would be timely completed. In that same letter, DVC warned Lonza that, if it failed to comply, DVC might terminate the BOA for default.

26. In response, by letter dated August 5, 2013, Lonza stated that its decision to phase down operations in Hopkinton would not further impact DVC, and that Lonza was willing to transfer the ongoing work to its facility in Visp, Switzerland, at cost to DVC. Lonza did not provide a cure plan.

27. As a result, by letter dated August 8, 2013, DVC reminded Lonza that it "did not adequately address how Lonza will make sufficient progress so as not to endanger performance. Therefore, DVC hereby directs Lonza to commence the Antigen B Process Performance Qualification (PPQ) campaign at the Lonza Hopkinton facility no later than September 23, 2013 under the terms of the referenced subcontract or Lonza will be considered to be in breach of its subcontract."

28. DVC's August 8, 2013 letter explained that it "was compelled to issue the contractual Cure Notice due to Lonza's failure to meet the agreed to schedule and to provide visibility into a detailed remedy for the schedule and cost impacts of Lonza's failure to make progress on the development of the recombinant botulinum vaccine, rBV A/B."

29. DVC's August 8, 2013 letter explained that "the delays in completion of the Antigen B PPQ campaign, encompassed under Task Order 29, have significantly impacted DVC's ability to deploy this vaccine for the protection of our warfighters."

30. By letter dated August 12, 2013, DVC demanded that Lonza "provide written confirmation **no later than August 19, 2013** of Lonza concurrence with the DVC requested start date of September 23, 2013 for the Antigen B Process Performance Qualification (PPQ) campaign at Lonza Hopkinton facility" (emphasis in original).

31. By letter dated August 19, 2013, DVC again "reiterates the unambiguous direction provided in our August 8, 2013 letter: Lonza is directed to commence the Antigen B Process Performance Qualification (PPQ) campaign at Lonza Hopkinton facility no later than September 23, 2013, under the terms of the referenced subcontract."

32. In its August 19, 2013 letter, DVC warned Lonza that, if it "fails to comply with this direction, Lonza will be considered in breach of the referenced subcontract. In addition to the resulting claim that DVC will file against Lonza for damages associated with the breach of subcontract, DVC will also hold Lonza liable for all technology transfer costs to another manufacturing facility."

33. When Lonza thereafter refused to respond and failed to perform, DVC, by letter dated August 23, 2013, notified Lonza that it was in breach of contract and that, under the terms of the BOA and the Federal Acquisition Regulations, DVC would proceed with termination efforts on all open Task Orders. DVC explained that it was taking this action because Lonza failed to submit an acceptable cure plan, despite repeated requests, and because Lonza refused to agree to resume work at its Hopkinton facility, in direct contravention of DVC requests.

34. By letter dated September 5, 2013, Lonza acknowledged DVC's decision to terminate the contract and pledged to cooperate with DVC in transferring the technology and intellectual property to a new manufacturer.

35. Lonza then reversed course and refused to transfer the relevant technology and intellectual property until a final resolution over liability and damages with DVC was reached. After DVC filed suit against Lonza to obtain possession of these critical materials (*see DynPort Vaccine Company, Inc. v. Lonza Biologics, Inc.*, Civil Action No. 13-cv-3291-JKB (D. Md.)), Lonza agreed to transfer the relevant technology and intellectual property to a new manufacturer. The lawsuit was then voluntarily dismissed by DVC without prejudice.

36. DVC has incurred significant costs due to Lonza's refusal to perform and its breach of the agreement. These include the costs incurred in the retention of a new manufacturer, transfer of the production to that new manufacturer, manufacturing of new conformance lots for the Phase 3 clinical trial, and implementation costs incurred for the Phase 3 clinical trial.

37. In addition, as a direct result of Lonza's failure to perform, major elements of the vaccine development process must be redone. Re-performance is required because the use of any drug substance material and associated process validation data from the Lonza site in support of the Phase 3 campaign would add an inordinate level of risk to the acceptability of the Phase 3 data as being representative of the final commercial process, and thus would severely jeopardize the ability of the product to be approved. Consequently, all the work that was performed by Lonza after the Phase 2 campaign will have to be redone by a new manufacturer as a result of Lonza's breach of the contract and its failure to complete the work at its original Hopkinton facility.

## COUNT I – BREACH OF CONTRACT

38. DVC repeats and realleges paragraphs 1 through 37 as if they were fully set forth herein.

39. DVC and Lonza entered into the BOA wherein Lonza agreed, in exchange for receiving tens of millions of dollars from DVC, that it would receive and develop certain technology and intellectual property.

40. The BOA is a valid, enforceable and legally binding agreement.

41. As described above, Lonza refused or failed to perform under the contract.

42. Lonza's breach has caused DVC to suffer direct damages. These damages include, but are not limited to, monetary damages, injuries to its business reputation, and to its ability to maintain or obtain additional government contracts.

43. Lonza is liable to DVC for those damages.

## COUNT II – NEGLIGENCE

44. DVC repeats and realleges paragraphs 1 through 43 as if they were fully set forth herein.

45. By entering into the BOA, Lonza undertook a duty owed to DVC.

46. By failing or refusing to perform under the BOA, Lonza breached its duty owed to DVC.

47. As a direct consequence of Lonza's breach of its duty, DVC suffered actual losses, as explained above.

48. DVC's losses were directly and proximately caused by Lonza's breach of its duty.

49. Lonza is liable to DVC for those damages.

## COUNT III – UNJUST ENRICHMENT

50. DVC repeats and realleges paragraphs 1 through 49 as if they were fully set forth herein.

51. DVC paid Lonza over $18.9 million to develop vaccine products.

52. DVC received no useable vaccine products from Lonza. All the work performed by Lonza associated with final process validation and the Phase 3 manufacturing campaign will have to be redone by a new manufacturer.

53. Lonza receipt of over $18.9 million, when producing no value to DVC, resulted in Lonza being unjustly enriched and benefited at the direct expense of DVC.

54. As a direct consequence of Lonza's unjust enrichment, DVC suffered actual losses, as explained above.

55. DVC's losses were directly and proximately caused by Lonza's unjust enrichment.

56. Lonza is liable for DVC's damages.

WHEREFORE, pursuant to Counts I through III, DVC seeks judgment against Lonza as follows:

A. For economic damages in an amount to be proven at trial;

B. For interest, costs of suit, and attorneys' fees; and

C. For such other and further relief as the Court may deem just and proper.

Dated: September 15, 2014

Respectfully submitted,

_____
Leslie Paul Machado (Bar No. 14952)
LeClairRyan, a Professional Corporation
2318 Mill Road, Suite 600
Alexandria, Virginia 22310
(703) 647-5928 (phone)
(703) 647-5968 (facsimile)
leslie.machado@leclairryan.com

Robert P. Fletcher (Bar No. 02893)
LeClairRyan, a Professional Corporation
815 Connecticut Avenue NW, Suite 620
Washington, D.C. 20006
(202) 659-6714 (phone)
(202) 659-4130 (facsimile)
robert.fletcher@leclairryan.com

*Counsel for Plaintiff DynPort Vaccine Company LLC*