IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **DYNPORT VACCINE CO. LLC,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-14-2921 |
| **LONZA BIOLOGICS, INC.,** | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff DynPort Vaccine Company LLC sued Defendant Lonza Biologics, Inc., in a three-count complaint, alleging breach of contract, negligence, and unjust enrichment. (Compl., ECF No. 1.)  Pending before the Court is Lonza's motion to dismiss or, in the alternative, for more definite statement under Federal Rule of Civil Procedure 12(b)(6) and 12(e).  (ECF No. 12.)  The matter has been briefed (ECF Nos. 13 and 17), and no hearing is required, Local Rule 105.6 (D. Md. 2014).  Treating Lonza's motion as a motion to dismiss, the Court will grant it in part and deny it in part.  Treating it as a motion for more definite statement, the Court will grant the motion as to Count I.

### I. Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere

possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## II. Standard for More Definite Statement

Under Rule 12(e),

> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must . . . point out the defects complained of and the details desired.

Noting the interplay between the fundamental pleading requirements of Rule 8(a) and the permissibility of a motion for more definite statement under Rule 12(e), the Fourth Circuit has stated, "when the complaint conforms to Rule 8(a) and it is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court should deny a motion for a more definite statement." *Hodgson v. Va. Baptist Hosp.*, 482 F.2d 821, 824 (4th Cir. 1973).

## III. Allegations of the Complaint

DynPort alleges it has a contract with the United States government to develop a vaccine against botulinum neurotoxin for the U.S. military and that DynPort, in turn, contracted with Lonza to manufacture the vaccine for DynPort. (Compl. ¶ 1.) DynPort alleges it entered into a

basic ordering agreement ("BOA") in 2002 with Lonza,[1] wherein Lonza "agreed to provide certain services, pursuant to task orders, in the development of certain vaccine products." (*Id.* ¶ 9.) DynPort issued various task orders ("TOs") to Lonza, including three mentioned specifically in the complaint: TO 24 (January 2008), TO 32 (December 2010), and TO 29 (June 2011). (*Id.* ¶¶ 16, 18, 19.) Under these three TOs, DynPort paid Lonza $18.9 million for work to be performed. (*Id.* ¶ 22.)

In early February 2013, DynPort learned that Lonza's work on the TOs had to be delayed because Lonza's Hopkinton, Massachusetts, facility was required by the Food & Drug Administration ("FDA") to implement certain corrective actions to address the FDA's criticisms of Lonza's manufacturing practices. (*Id.* ¶ 23.) On July 25, 2013, a press release from Lonza announced it was moving its Hopkinton operations to a facility in Visp, Switzerland. (*Id.* ¶ 24.) The same day, DynPort advised Lonza via letter of DynPort's concern as to "the impact of these events on Lonza's ability to comply with its production requirements under the pending task orders, and requested that Lonza provide a cure plan to ensure that the schedule would be maintained and that the outstanding task orders would be timely completed." (*Id.* ¶ 25.) Concurrently, DynPort warned Lonza that its failure to comply might result in DynPort's termination of the BOA for default. (*Id.*)

In a letter dated August 5, 2013, Lonza indicated that its decision about Hopkinton "would not further impact [DynPort], and that Lonza was willing to transfer the ongoing work to its facility in Visp, Switzerland, at cost to [DynPort]. Lonza did not provide a cure plan." (*Id.* ¶ 26.) Three days later, DynPort wrote Lonza, pointing out the deficiency in Lonza's response

---

[1] More precisely, DynPort entered into the agreement with Lonza's predecessor, Cambrex Bio Science, Inc., in 2002. Cambrex was purchased by Lonza Hopkinton, Inc., in 2008, and the BOA was modified to reflect the name change. Then, in 2009, the BOA was again amended to reflect the change of the responsible party to Lonza Biologics, Inc., the present defendant. (Compl. ¶¶ 9-11.)

and directing "Lonza to commence the Antigen B Process Performance Qualification (PPQ) campaign at the Lonza Hopkinton facility no later than September 23, 2013 under the terms of the referenced subcontract or Lonza will be considered to be in breach of its subcontract." (*Id.* ¶ 27.) Further, in a letter dated August 12, 2013, DynPort demanded Lonza provide no later than August 19, 2013, its written confirmation of Lonza's concurrence with DynPort's requested start date of September 23, 2013, at the Hopkinton facility. (*Id.* ¶ 30.) In an August 19, 2013, letter, DynPort warned Lonza that its failure to comply with this direction from DynPort would be considered a breach of the subcontract, that DynPort would file a claim for damages against Lonza, and that DynPort would hold Lonza liable for all technology transfer costs to another manufacturing facility. (*Id.* ¶ 32.) Not receiving a response from Lonza within the allotted time, DynPort "by letter dated August 23, 2013, notified Lonza that it was in breach of contract and that, under the terms of the BOA and the Federal Acquisition Regulations, [DynPort] would proceed with termination efforts on all open Task Orders." (*Id.* ¶ 33.)

In a letter dated September 5, 2013, Lonza acknowledged DynPort's termination of the contract and pledged to cooperate in the transfer of technology and intellectual property to another manufacturer. (*Id.* ¶ 34.) This pledge was broken when Lonza thereafter refused to transfer the technology and intellectual property to DynPort until they had reached a final resolution of the issues of liability and damages. (*Id.* ¶ 35.) After DynPort filed suit for injunctive relief on the issue of transfer of technology and intellectual property, *DynPort Vaccine Co., Inc. v. Lonza Biologics, Inc.*, Civ. No. JKB-13-3291 (D. Md.), the parties resolved that issue and DynPort voluntarily dismissed its suit without prejudice. (*Id.* ¶ 35.)

DynPort alleges it has incurred significant costs because of Lonza's refusal to perform and its breach of the agreement, including "retention of a new manufacturer, transfer of the

production to that new manufacturer, manufacturing of new conformance lots for the Phase 3 clinical trial, and implementation costs incurred for the Phase 3 clinical trial." (*Id.* ¶ 36.) Additionally, DynPort alleges that a consequence of Lonza's failure to perform is that "major elements of the vaccine development process must be redone"; "[c]onsequently, all the work that was performed by Lonza after the Phase 2 campaign will have to be redone by a new manufacturer . . . ." (*Id.* ¶ 37.)

## IV. Analysis

### A. *Count I – Breach of Contract*

DynPort alleges "[t]he BOA is a valid, enforceable and legally binding agreement" that Lonza refused or failed to perform and thereby caused DynPort damages for which Lonza is liable. (*Id.* ¶¶ 40-43.) Lonza's motion is premised upon the argument that the BOA is not actually an enforceable contract and, therefore, DynPort's claim of breach of the BOA fails to state a claim for relief. (Def.'s Mot. Dismiss Supp. Mem. 1.) Lonza concedes the task orders ("TOs") are binding and legally enforceable contracts, but points out that DynPort did not, in Count I, specify that it was relying upon the TOs for its breach of contract claim. (*Id.* 2, 6, 8.) DynPort responds that Lonza's argument is "hypertechnical" and that Count I, when read in conjunction with the other factual allegations, sufficiently alleges a breach of the three TOs specified in the complaint. (Pl.'s Opp'n 4-5.)

The meager case law available regarding the legal enforceability of a BOA firmly concludes that such an agreement is not an enforceable contract, despite its use of terms typically used in the language of contracts. In *Modern Sys. Tech. Corp. v. United States*, 979 F.2d 200 (Fed. Cir. 1992), the Court of Appeals for the Federal Circuit determined that the agreement in

question there, which it likened to a BOA, was merely the framework for future contracts; thus, "[c]ontractual obligations will arise only after an order is placed." *Id.* at 203-04.

> In essence, this arrangement is an agreement to agree, a set of ground rules as it were, and no obligations are assumed by either party until orders are given by the Government and accepted by the contractor. In other words, the basic agreement of itself is not a contract, and does not become a contract except to the extent that orders are issued under it.

2 J. McBride & T. Touhey, *Government Contracts* § 18.70 (1984), *quoted in Modern Sys.*, 979 F.2d at 204. *See also Crewzers Fire Crew Transport, Inc. v. United States*, 741 F.3d 1380, 1383-84 (Fed. Cir. 2014) (reaffirming rationale of *Modern Sys.*).

The critical element of mutuality of obligation is missing from the instant BOA, a copy of which has been supplied by Lonza as an exhibit to its motion to dismiss; DynPort does not dispute the authenticity of the document, which is relied upon by DynPort and is integral to its complaint. Thus, it may be considered by the Court in evaluating the motion to dismiss. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

The BOA states: "The Subcontractor shall furnish all labor, facilities, equipment, and material and perform all services set forth in the statements of work of task orders issued hereunder . . . ." (BOA, Def.'s Mot. Dismiss Ex. 1, p. 1.) It also states, "TOs may be issued at the Contractor's discretion in accordance with this BOA's ordering procedures . . . ." (*Id.* sec. B.1.2.1, p. 3.) The BOA further states, "Contractor may issue TOs to Subcontractor under this BOA . . . ." (*Id.* sec. F.2.1, p. 4.) Under these provisions, DynPort is under no obligation to issue any TOs. Thus, the BOA is not itself an enforceable contract.

However, since both parties agree that the TOs are enforceable contracts that governed their relationship, and since DynPort has clarified that TOs 24, 32, and 29 are the only TOs at

issue in this case, Count I is hereby redefined as claiming breach of contract as to those three TOs.  The motion for more definite statement will be granted as to Count I.

### B. Count II – Negligence

DynPort alleges Lonza, by entering into the BOA, undertook a duty owed to DynPort and further alleges Lonza breached its duty and proximately caused DynPort to suffer damages. (Compl. ¶¶ 45-48.)  This bare-bones form of pleading is insufficient under the governing *Twombly-Iqbal* standard because it merely recites the elements of a cause of action for negligence.  *See Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do").  The preceding forty-three paragraphs incorporated by reference into the negligence count (*id.* ¶ 44) are clearly cast in the language of a contract claim and do not allow an inference of a separate duty of care arising either from the contract or from circumstances external to the contract.  Moreover, Maryland law does not support the invocation of tort law in the instant case:

> While a tort action in favor of a contracting party can be founded upon a duty arising out of the contractual relationship, the duty giving rise to the tort cause of action must be independent of the contractual obligation. . . . Mere failure to perform a contractual duty, without more, is not an actionable tort.

*Wilmington Trust Co. v. Clark*, 424 A.2d 744, 754 (Md. 1981) (citations omitted).  Because DynPort's complaint does not allege factual content from which the Court can infer a tort duty of care or a breach of anything other than contractual duties, Count II founded upon negligence fails to state a claim for relief.

### C. Count III – Unjust Enrichment

Unjust enrichment is a quasicontractual claim that provides a remedy to a plaintiff when no contract exists between plaintiff and defendant.  *County Comm'rs, Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 611 (Md. 2000).  But a claim of "unjust enrichment

cannot be asserted when an express contract defining the rights and remedies of the parties exists." *Id.* at 610. Because DynPort has alleged—and Lonza has conceded—that an express contract existed between it and DynPort (in the form of the three TOs), and because no dispute as to the terms of the contract has manifested itself, the unjust enrichment claim fails to state a claim for relief and must be dismissed.

## *V. Conclusion*

DynPort will be granted leave to amend Count I. Counts II and III will be dismissed by separate order for failure to state a claim for relief.

DATED this 30th day of April, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge